# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>A red Apple phone in a clear case (Target Device 1) and A blue iPhone<br>in a clear case (Target Device 2), currently located at the St. Charles<br>County Police Department, located at 101 Sheriff Dierker Court,<br>O'Fallon, Missouri 63366, within the Eastern District of Missouri. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 4:23-MJ-7248-SPM

SIGNED AND SUBMITTED TO THE COURT FOR
FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ EASTERN _____ District of _____ MISSOURI _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section - Offense Description*

Title 21, United States Code, Section 841(a)(1) and Section 846 (possession with intent to distribute and conspiracy to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of firearms in furtherance of drug trafficking crimes); and violations of Title 18, United States Code, Sections 2251 (production of child pornography) and 2252A (receipt and possession of child pornography)

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

*Joe McKinney*
*Applicant's signature*

Joe R. McKinney, TFO
*Printed name and title*

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedures 4.1 and 41.

Date: _____ 07/12/2023 _____

*Judge's signature*

City and state: St. Louis, MO

Honorable Shirley Padmore Mensah, U.S. Magistrate Judge
*Printed name and title*

AUSA: Nathan Chapman

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A red Apple phone in a clear case (Target Device 1) and A blue iPhone in a clear case (Target Device 2), currently located at the St. Charles County Police Department, located at 101 Sheriff Dierker Court, O'Fallon, Missouri 63366, within the Eastern District of Missouri. | No. 4:23-MJ-7248-SPM<br><br>SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Joe R. McKinney, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the items listed in **Target Device 1 – Attachment A** and **Target Device 2 – Attachment A**, for the things described in **Target Device 1 – Attachment B** and **Target Device 2 – Attachment B**.

2.      I am a Task Force Officer with the United States Drug Enforcement Administration (DEA) St. Louis Division, and have been since January 2017.  I am a sworn police officer since August 2005; having served with the Ballwin Police Department, at which time, during my time as a Ballwin Police Officer, I was detached to the St. Louis County Multi-Jurisdictional Drug Task Force.  Most currently, I am employed as a police officer by the St. Charles County Police Department.  During my tenure with DEA, the St. Louis County Multi-Jurisdictional Drug Task Force and as a Task Force Officer, I have been assigned to an investigative team for numerous complex investigations of drug-trafficking organizations dealing in heroin, cocaine, marijuana, and other controlled substances.  These investigations have resulted in the seizure of heroin,

1

methamphetamine, marijuana, other controlled substances, and weapons.  I am familiar with and have utilized normal methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and the use of court-authorized wire intercepts.  My specialized training has included, but is not limited to, investigating the manufacture, possession, and distribution of controlled substances listed within the Controlled Substance Act, executing search and arrest warrants  involving drug offenses, gathering drug and non-drug evidence, supervising and utilizing informants, identifying clandestine laboratories, smuggling drugs and proceeds, money laundering, monitoring drug related  conversations via court authorized electronic eavesdropping, testifying in court in drug related matters, and court authorized interception of wire/electronic communications. My training with the Drug Enforcement Administration and as a sworn police officer has included specific training directly related to the aforementioned investigative techniques.

3.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of violation of Title 21, United States Code, Section 841(a)(1) and Section 846 (possession with intent to distribute and conspiracy to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of firearms in furtherance of drug trafficking crimes); and violations of Title 18, United States Code, Sections 2251 (production of child pornography) and 2252A (receipt and possession of child pornography), (hereinafter, the **Subject Offenses**) have been committed by **Tyler STAUB**, and other persons known and unknown.  There is also probable cause to search the devices described in **Target Device 1 – Attachment A** and **Target Device 2 – Attachment B**, for evidence of these crimes

2

and contraband or fruits of these crimes, as described in **Target Device 1 – Attachment B** and **Target Device 2 – Attachment B**.

4.     The statements contained in this affidavit are based on this affiant's personal knowledge, information from Detective James Poole of the St. Charles County Police Department, and information provided by other law enforcement officers.  Det. Poole is an investigator with the St. Charles County Police Department who investigates cases pertaining to Crimes Against Person(s).  Det. Poole has been in law enforcement for approximately 15 years.  Det. Poole has investigated matters involving the involving statutory rape, statutory sodomy, sexual misconduct involving a child, and sexual exploitation of a child.  Additionally, Det. Poole has made arrests and conducted searches pertaining to these types of investigations.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, this affiant has not included each and every fact known to this affiant concerning this investigation.

## PROPERTY TO BE SEARCHED

5.     The property to be searched are the items seized by the St. Charles County Police Department which are currently located at the St. Charles County Police Department, located at 101 Sheriff Dierker Court, O'Fallon, Missouri 63366, within the Eastern District of Missouri, and are comprised of the items detailed in **Target Device 1 – Attachment A** and **Target Device 2 – Attachment A**.  Specifically, the property to be searched is as follows:

   a.   A red Apple phone in a clear case (hereinafter **Target Device 1**)

   b.   A blue iPhone in a clear case (hereinafter **Target Device 2**)

6.     The applied-for warrant would be authorized the forensic examination of the **Target Devices** for the purpose of identifying electronically stored data particularly described in **Target Device 1 – Attachment B** and **Target Device 2 – Attachment B**.

## DEFINITIONS

7.   The following terms have the indicated meaning in this affidavit:

a.   The term "computer" means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such a device, but such term does not include an automated typewriter or typesetter, a portable handheld calculator, or other similar device. 18 USC § 1030(e).

b.   The term "minor" means any individual under the age of 18 years. 18 USC § 2256(1).

c.   Sexually explicit conduct means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the anus, genitals, or pubic area of any person. 18 USC § 2256(2)(A).

d.   Visual depiction includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image. 18 USC § 2256(5).

e.   Child pornography means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct or such visual depiction has been created, adapted, or modified to

4

appear that an identifiable minor is engaging in sexually explicit conduct. 18 USC § 2256(8)(A) or (C).

f.  Identifiable minor means a person who was a minor at the time the visual depiction was created, adapted, or modified; or whose image as a minor was used in creating, adapting, or modifying the visual depiction; and who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and shall not be construed to require proof of the actual identity of the identifiable minor. 18 USC § 2256(9).

g.  "Computer hardware," as used herein, consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data, including for example, tablets, digital music devices, portable electronic game systems, electronic game counsels and wireless telephones. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

h.  "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they

5

work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

i. "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, computer software, or other related items.

j. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

k. The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

l. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

6

Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

m. The terms "records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade form (including, but not limited to, writings, drawings, painting), photographic form (including, but not limited to, microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies), mechanical form (including, but not limited to, phonograph records, printing, typing) or electrical, electronic or magnetic form (compact discs, electronic or magnetic storage devices, hard disks, CD-ROMs, DVDs, Personal Digital Assistants (PDAs), Multi Media Cards (MMCs), thumb drives, flash drives, optical disks, printer buffers, smart cards, memory calculators, electronic dialers, electronic notebooks, cellular telephones, as well as digital data files and printouts or readouts from any magnetic, electrical or electronic storage device).

n. Electronic data may be more fully described as any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer-related equipment.

o. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication

through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. A wireless telephone may have wireless connection capabilities such as Wi-Fi and Bluetooth.

p.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly

available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

q. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication Devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

8. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at *www.apple.com/iphone/*, I know that the **Target Devices** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, devices capable of bearing an IP address, and devices capable of accessing the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the **Target Devices**.

## **PROBABLE CAUSE**

9. On June 22, 2023, Officer John Gresco and Officer Jonathan Brault with the St. Charles County Police Department took a report from T.S., regarding her daughter, 13-year-old J.H. (hereinafter "victim"). T.S. reported victim as a runaway and informed the officers the victim

had been seen dropped off at a party several days prior by someone driving a red or black Ford Mustang. T.S. further stated she was informed by the victim's older sister, S.H., that the victim may be dating a 23-year-old male.

10.    Officer Gresco and Officer Brault performed an investigative traffic stop on a black Ford Mustang, bearing Missouri State License JJ5 J1W in the victim's neighborhood. The driver of the Mustang was later identified as Tyler STAUB (22 years old), and the victim (13 years old) was the passenger. Officer Gresco and Officer Brault noted STAUB and the victim had "hickeys" on their necks. Det. James Poole spoke directly with Officer Gresco and Officer Brault about the circumstances of this case.

11.    STAUB was transported to the St. Charles County Police Station where he was interviewed by Det. Poole. STAUB said he met the victim through Snapchat[1] about two months previous, and she told him she was 18 years old. According to STAUB, the hickeys on his neck were from the victim, and any hickeys on the victim were from him. STAUB picked up the victim the night prior (June 21, 2023), and they had sex in his vehicle near a store. STAUB ejaculated on the floor of his vehicle when having sex with the victim. The victim also performed oral sex on STAUB in his vehicle. STAUB then drove the victim to a hotel in Arnold, Missouri where he had sex with her again. The victim used a phone (**Target Device 1**) STAUB had given her to record some of the sexual activity between them.

12.    STAUB stated that on June 20, 2023, he picked up the victim in his vehicle and they parked on a street in her neighborhood, which is in St. Charles County. The victim performed oral sex on STAUB, STAUB performed oral sex on the victim, and they had sexual intercourse.

---

[1] Snapchat is a mobile app that allows users to send and receive "self-destructing" photos and videos. Photos and videos taken with the app are called snaps. Snapchat uses the device's camera to capture snaps and send them out to other Snapchat users.

STAUB ejaculated on one of the seats in his vehicle.

13.    STAUB allowed Det. Poole to look at pictures and videos contained on his phone (**Target Device 2**).  Det. Poole observed several videos with thumbnails showing what appeared to be a female inserting something into her vagina.  STAUB said the videos were of the victim, using a hairbrush to masturbate.  STAUB believed the videos were sent through Facebook Messenger.

14.    While looking in STAUB's phone, Det. Poole saw STAUB's Snapchat username is chevyisforfags.    Det. Poole further identified STAUB's Instagram username as yamamaa.ah.btch and the victim's usernames as the_gorgeous_one0_ and tyler_sluv. Det. Poole observed many messages between STAUB and the victim through Facebook Messenger.  STAUB stated he also messaged the victim through Instagram[2] to her two accounts, through Snapchat, and through text on his phone.

15.    Det. Poole observed on **Target Device 2** that STAUB received a message from the victim's adult sister, S.H., and a second message from the victim's friend, telling him that the victim was 13 years old.  The victim sent pictures of documents showing she had a date of birth in 2004.  STAUB advised the documents the victim sent him convinced him she was 18 years old.  A cursory examination of the pictures of the documents by Det. Poole revealed the number 4 in the birth year on two of the documents were obviously edited.

16.    STAUB's phone was entered into evidence at the St. Charles County Police Department.

17.    After the traffic stop, the victim was transported to The Child Advocacy Center in

---

[2] Instagram is a free, online photo-sharing app and social networking platform.  People can upload photos and videos to Instagram and share with their followers or with a select group of friends.  They can also view, comment and like posts shared by their friends on Instagram.

Wentzville where she received a forensic interview.  Detective Geoffrey Presson observed the interview and relayed the substance of victim's statement directly to Det. Poole. The victim confirmed that STAUB picked her up on June 20, 2023, and they had sexual intercourse in his vehicle on a residential road in her neighborhood.  STAUB also performed oral sex on the victim, and the victim performed oral sex on STAUB.  STAUB again picked up the victim on June 21, 2023, and they had sex in his vehicle behind a T.J.Maxx store in St. Charles County. Later that night, STAUB drove the victim to a hotel where they had sexual intercourse.

18.     Det. Presson seized a red Apple phone in a clear case (**Target Device 1)** from the victim which she identified as the phone STAUB gave to her. Det. Presson placed the phone into evidence at the St. Charles County Police Department.

19.     The victim had hickeys on her neck, breasts, back, and buttocks from her sexual encounters with STAUB which were photographed by St. Charles County Crime Scene Investigations (CSI).

20.     STAUB's vehicle was towed to Superior Transport Service located at 11 Elaine Drive, O'Fallon, MO 63366 after the traffic stop.

21.     On June 26, 2023, Det. Poole applied for and was granted a state search warrant through the State of Missouri for STAUB's vehicle; (2022 Black Ford Mustang, bearing Missouri State License JJ5 J1W).  The search warrant was signed by St. Charles County Associate Circuit Court Judge Jeff Sandcork.

22.     On June 27, 2023, Det. Poole and CSI Smallwood responded to Superior Towing. Upon arrival, Det. Poole executed the State Search Warrant for STAUB's vehicle.

23.     During a search of STAUB's vehicle, investigators located a black plastic bag containing a tied off, clear plastic bag with a large quantity of turquoise circular tablets, and a

vacuum type bag with turquoise circular tablets. Based on this officer's training and experience, the tablets were suspected fentanyl. Investigators also located a Radical Firearms RF-15 AR style pistol, an empty PMAG D60 drum magazine, and a TOUGHSOUL box containing 40 live ammunition cartridges (32 x .223 copper jacketed cartridges and 8 x green tipped cartridges) under the front driver's seat.

24.    These items were later seized as evidence and transported to the St. Charles County Police Department.

25.    On July 7, 2023, TFO Joe McKinney received the St. Charles County Criminalistics Laboratory Report regarding the suspected fentanyl tablets that were seized from STAUB's vehicle. The vacuum type bag contained 39 greenish-blue tablets marked "M30." One tablet was tested, and found to contain fentanyl, a schedule II-controlled substance. The tied-off clear plastic bag contained 677 round green tablets marked "M30," 168 blue tablets marked "M30," and three beige tablets marked "M30." One tablet was tested and found to contain fentanyl. Based on TFO McKinney's training and experience and the large number of "M30" fentanyl tablets seized from STAUB's vehicle, this would be consistent with that of an individual who was distributing fentanyl.

26.    The **Target Devices** are currently in the lawful possession of the St. Charles County Police Department (hereinafter the "investigative agency"). **Target Device 1** came into the investigative agency's possession after being seized during a CAC interview of the victim. **Target Device 2** came into the investigative agency's possession after being seized during the arrest of Tyler SHAUB. Therefore, while the investigative agency might already have all necessary authority to examine the Device(s), I seek this additional warrant out of an abundance of caution

to be certain that an examination of the **Target Devices** will comply with the Fourth Amendment and other applicable laws.

## BACKGROUND ON CELL PHONES, COMPUTERS, AND DRUG TRAFFICKING

27.    Based on my training and experience, and discussions I have had with other law enforcement officers,  I know that individuals engaged in the criminal activities described herein typically utilize electronic devices and mobile telephones for a variety of purposes to advance and commit criminal offenses. Subjects use electronic devices to facilitate their overall schemes and their illicit endeavors.   Individuals engaged in the activities described in this affidavit use electronic devices and mobile phones for a variety of reasons including the following:

   a.    to communicate with associates and co-conspirators before, during, and after their criminal activities, or to communicate with other non-involved third parties.  They do this through via text, voice, video or photo and on applications running on the device.  Applications operated on electronic devices give individuals the ability to communicate anonymously with other persons;

   b.    to access mapping and location services to assist in planning and facilitating their crimes, and to plan for their escape from crime scenes.  Location data can indicate the user's patterns of behavior such as their physical location at the time the incidents occurred, and immediately prior to or after such incidents.  It may also provide data related to the location of associates' residences, safe houses or other places used to perpetrate crimes;

   c.    to access contact lists of associates, confederates, and third parties;

   d.    Individuals take pictures and videos of themselves and associates.  They do so to memorialize their activities and the fruits of their illicit activities such as

14

contraband, firearms, and illegally obtained currency. They use the images or to brag to other confederates. These individuals frequently keep photographs on their electronic devices and, as described below, often post the images on social media; and

e. Individuals use electronic devices to communicate over online social media platforms such as Facebook, Twitter, Snapchat, etc. They communicate with their associates and confederates over such platforms. They post and display images and videos of contraband, fruits of their crimes, wealth, and otherwise memorialize criminal activities.

28.     I also know based on my training and experience that individuals involved in the trafficking of narcotics use devices such as the subject electronic devices to facilitate their overall schemes and their illicit endeavors. In order to make it easier for drug currency and narcotics traffickers to communicate with one another, their phones and other devices often contain stored telephone numbers, programmed names, addresses, and encrypted codes and names. I also know that the phones and other communication devices of currency and narcotics traffickers often contain voicemails, text messages, photographs and emails relating to communications with co-conspirators, meeting locations as well as the telephone numbers of co-conspirators who have called or been called by the device.

## BACKGROUND ON CELL PHONES, COMPUTERS, AND CHILD PORNOGRAPHY

29.     Evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

30.     Based on Det. Poole's training and experience and that of other law enforcement officers that Det. Poole works with, it is not uncommon for persons trading in, receiving, distributing or possession of images or movies involving child pornography to download to or make copies of those files on their computer's hard drive or other removable media for viewing at a later time or for sharing with other people interested in child pornography. Searching computer and computer storage devices systems for criminal evidence requires experience in the computer field and a properly controlled environment in order to protect the integrity of the evidence and recover even "hidden," erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (either from external sources or from destructive code imbedded in the system as a "booby trap"), the controlled environment of a laboratory is essential to its complete and accurate analysis.

31.     Based on Det. Poole's training and experience and that of other law enforcement officers that Det. Poole works with, persons trading in, receiving, distributing or possessing images involving the exploitation of children or those interested in the actual exploitation of children often communicate with others through correspondence or other documents (whether digital or written) which could tend to identify the origin of the images as well as provide evidence of a person's interest in child pornography or child exploitation.  Files related to the exploitation of children found on computers are usually obtained from the Internet using application software which often leaves files, logs or file remnants which would tend to show the exchange, transfer, distribution, possession or origin of the files.  Computers used to access the Internet usually contain files, logs or file remnants which would tend to show ownership and use of the computer as well as ownership and use of internet service accounts used for the internet access.

16

32.    In my training and experience, I know that cellular phones (including smartphones), contain software and hardware that are the same, if not more sophisticated, than a typical home computer. The term "computer," "hard drive," and "computer media," as used in this affidavit, also refers to cellular phone or smartphones.

33.    I also know that "smartphones" often allow for cloud-based storage, and many users back up their phones on their home computers. Information contained in a cell phone/smartphone that is connected to a desktop, laptop computer, or the cloud, can easily transfer onto other media.

34.    A computer's ability to store images in digital form makes a computer an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

35.    The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing and trading child pornography in a relatively secure and anonymous fashion.

36.    Collectors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo!, iCloud, and Hotmail, and social media applications such as Kik and Snapchat among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer, even if the user is accessing the information on their cellular "smart phone." Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

37.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional, i.e., by saving an e-mail as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer to peer software, when the computer was sharing files, and some of the files which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data.

38.     Further, based on Det. Poole's training and experience and that of other law enforcement officers that Det. Poole works with, people who collect child pornography tend to keep the images they get for extended periods of time. They tend to regard the images as trophies and use them for sexual gratification. They also use them as bargaining tools when trading with others.  Based on Det. Poole's training and experience and that of other law enforcement officers that Det. Poole works with, the fact that other investigators in other regions are observing the same activity of making child pornography available for downloading is consistent with someone who is actively involved in the acquisition or downloading of child pornography.

39.     In my training and experience, I know that the device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the device first came into the possession of the investigative agency.

## SEARCH METHODOLOGY TO BE EMPLOYED

40.     The search procedure of electronic data contained in a smartphone, computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

    a.  Examination of all of the data contained in such computer hardware, cellular telephone, smartphone, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as listed in Attachment A;

    b.  Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

    c.  Surveying various file directories and the individual files they contain;

    d.  Opening files in order to determine their contents;

    e.  Scanning storage areas;

    f.   Performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Target Device 1 – Attachment B and Target Device 2 – Attachment B; and/or

g. Performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Target Device 1 – Attachment B and Target Device 2 – Attachment B.

41. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **Target Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

## **CONCLUSION**

42. Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located at the devices described in Attachment A. I respectfully request that this Court issue a search warrant for the devices described in Attachment A, authorizing the seizure and search of the information located on these devices described in Attachment B.

43. I am aware that the recovery of data by a computer forensic analyst takes significant time; much the way recovery of narcotics must later be forensically evaluated in a lab, digital evidence will also undergo a similar process. For this reason, the "return" inventory will contain a list of only the tangible items recovered from the devices. Unless otherwise ordered by the Court, the return will not include evidence later examined by a forensic analyst.

44. Because this warrant seeks only permission to examine the **Target Devices** already in law enforcement's possession, the execution of this warrant does not involve the physical

20

intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

45.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, *i.e.*, post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

I state under the penalty of perjury that the foregoing is true and correct.

_Joe McKinney_
JOE MCKINNEY
Task Force Officer
Drug Enforcement Administration

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on this _____ day of July 2023.

HONORABLE SHIRLEY P. MENSAH
United States Magistrate Judge

21

## <u>TARGET DEVICE 1 – ATTACHMENT A</u>

The following device and media is currently located at the St. Charles County Police Department, located at 101 Sheriff Dierker Court, O'Fallon, Missouri 63366, within the Eastern District of Missouri.

   a.   A red Apple phone in a clear case (**Target Device 1**)





1

## **TARGET DEVICE 1 – ATTACHMENT B**

The following are to be seized from the device and media listed in **Target Device 1 – Attachment A**: Evidence, instrumentalities and contraband concerning the violations of Title 21, United States Code, Section 841(a)(1) and Section 846 (possession with intent to distribute and conspiracy to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of firearms in furtherance of drug trafficking crimes); and violations of Title 18, United States Code, Sections 2251 (production of child pornography) and 2252A (receipt and possession of child pornography) (hereinafter the subject offenses).

1.      All records on **Target Device 1** described in **Target Device 1 – Attachment A** that relate to violations of Title 21, United States Code, Section 841(a)(1) and Section 846 (possession with intent to distribute and conspiracy to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of firearms in furtherance of drug trafficking crimes); and violations of Title 18, United States Code, Sections 2251 (production of child pornography) and 2252A (receipt and possession of child pornography) including: dialed-call telephone numbers; received-call telephone numbers; missed-call telephone numbers; names, telephone numbers, addresses and other data located in the address books or contacts databases; photographs; voicemails; emails and text messages stored, and/or removable SIM cards, and/or removable data cards, and data stored, audio/video files;

2.      Records evidencing the use of the Internet to communicate via email, social media websites, or other electronic means, including:

a.   records of Internet Protocol addressed used;

     b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

3.     All data files, including but not limited to, records and graphic representations, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records pertaining to the subject offenses;

4.     Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the subject offenses;

5.     Electronic mail, chat logs, Internet Relay Chat (IRC) log files and electronic messages pertaining to the subject offenses;

6.     Log files and other records concerning dates and times of connection to the Internet and to websites pertaining the subject offenses;

7.     Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the subject offenses.

8.     All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A) or (C).

9.     Any and all passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

10.     Any and all notes, documents, records, correspondence, in any format and medium (including, but not limited to, email messages, chat logs, electronic messages, notes), emails,

3

computer logs, and browser and internet history pertaining to the production, possession, receipt or distribution of child pornography (or attempt to do so) or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A) or (C), and violations of Title 21, United States Code, Section 841(a)(1) and Section 846 (possession with intent to distribute and conspiracy to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of firearms in furtherance of drug trafficking crimes); and violations of Title 18, United States Code, Sections 2251 (production of child pornography) and 2252A (receipt and possession of child pornography).

11.     Any and all records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, as well as any and all records relating to the ownership or use of the electronic devices and media listed in **Target Device 1 – Attachment A**.

12.     Documents and records regarding the ownership and/or possession of the electronic devices and media listed in **Target Device 1 – Attachment A**.

13.     Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

14.     Any information related to sources of drugs or drug customers (including names, addresses, phone numbers, or any other identifying information);

15.     Any information recording **Tyler SHAUB** and/or **Victim** schedule or travel relating to the present violations;

16.     All bank records, checks, credit card bills, account information, and other financial records.

4

17.    Evidence of user attribution showing who used or owned **Target Device 1** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

### TARGET DEVICE 2 – ATTACHMENT A

The following device and media is currently located at the St. Charles County Police Department, located at 101 Sheriff Dierker Court, O'Fallon, Missouri 63366, within the Eastern District of Missouri.

   a.   A blue iPhone in a clear case (**Target Device 2**)





**TARGET DEVICE 2 – ATTACHMENT B**

The following are to be seized from the devices and media listed in **Target Device 2 – Attachment A**: Evidence, instrumentalities and contraband concerning the violations of Title 21, United States Code, Section 841(a)(1) and Section 846 (possession with intent to distribute and conspiracy to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of firearms in furtherance of drug trafficking crimes); and violations of Title 18, United States Code, Sections 2251 (production of child pornography) and 2252A (receipt and possession of child pornography).

1.      All records on **Target Device 2** described in **Target Device 2 – Attachment A** that relate to violations of Title 21, United States Code, Section 841(a)(1) and Section 846 (possession with intent to distribute and conspiracy to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of firearms in furtherance of drug trafficking crimes); and violations of Title 18, United States Code, Sections 2251 (production of child pornography) and 2252A (receipt and possession of child pornography); including: dialed-call telephone numbers; received-call telephone numbers; missed-call telephone numbers; names, telephone numbers, addresses and other data located in the address books or contacts databases; photographs; voicemails; emails and text messages stored, and/or removable SIM cards, and/or removable data cards, and data stored, audio/video files;

2.      Records evidencing the use of the Internet to communicate via email, social media websites, or other electronic means, including:

      a.   records of Internet Protocol addressed used;

     b.   records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

3.     All data files, including but not limited to, records and graphic representations, that is, documents and visual depictions of accounting records, websites, marketing, and facilitating records pertaining to the subject offenses;

4.     Graphic interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI and MPEG) containing matter pertaining to the subject offenses;

5.     Electronic mail, chat logs, Internet Relay Chat (IRC) log files and electronic messages pertaining to the subject offenses;

6.     Log files and other records concerning dates and times of connection to the Internet and to websites pertaining the subject offenses;

7.     Any Instant Message conversations, chats, e-mails, text messages, or letters pertaining to the subject offenses.

8.     All visual depictions, including still images, videos, films or other recordings of child pornography or minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A) or (C).

9.     Any and all passwords and other data security devices designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code.

10.     Any and all notes, documents, records, correspondence, in any format and medium (including, but not limited to, email messages, chat logs, electronic messages, notes), emails,

computer logs, and browser and internet history pertaining to the production, possession, receipt or distribution of child pornography (or attempt to do so) or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(8)(A) or (C), and violations of Title 21, United States Code, Section 841(a)(1) and Section 846 (possession with intent to distribute and conspiracy to distribute a controlled substance), Title 18, United States Code, Section 924(c) (possession of firearms in furtherance of drug trafficking crimes); and violations of Title 18, United States Code, Sections 2251 (production of child pornography) and 2252A (receipt and possession of child pornography).

11.     Any and all records, documents, invoices, notes and materials that pertain to accounts with any Internet Service Provider, as well as any and all records relating to the ownership or use of the electronic devices and media listed in **Target Device 2 – Attachment A**.

12.     Documents and records regarding the ownership and/or possession of the electronic devices and media listed in **Target Device 2 – Attachment A**.

13.     Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

14.     Any information related to sources of drugs or drug customers (including names, addresses, phone numbers, or any other identifying information);

15.     Any information recording **Tyler SHAUB** and/or **Victim** schedule or travel relating to the present violations;

16.     All bank records, checks, credit card bills, account information, and other financial records.

17.     Evidence of user attribution showing who used or owned **Target Device 2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.